IRENE NELSON, *as Trustee, et al., Appellants,* v.
N. W. SJOGREN, *Respondent.*[1]

*Henderson, Carnahan & Thompson,* for appellants.
*Robert B. Abel,* for respondent.

BLAKE, J.—The defendant, Sjogren, being the holder
of a chattel mortgage on an auto truck executed by
one Overaa, started foreclosure by notice and sale. The
plaintiffs, claiming ownership of the truck, brought
this action to transfer the proceedings to the superior
court and to enjoin sale by the sheriff. The sole issue
presented is whether Overaa, at the time he executed
the chattel mortgage, was owner of the truck. The trial
court found that he was, and entered judgment of fore-
closure, from which plaintiffs appeal.

Whatever title to the truck Overaa had, was derived
through the foreclosure of a chattel lien which he
claimed against the truck. The appellants challenge
the foreclosure of the chattel lien on the ground that

[1]Reported in 30 P. (2d) 653.

personal service of notice of sale thereunder was not served on appellant Overland pursuant to Rem. Rev. Stat., § 1157. That statute provides that such a lien may be foreclosed "by notice and sale in the same manner that a chattel mortgage is foreclosed." Rem. Rev. Stat., § 1106, relating to the foreclosure of chattel mortgages, provides: "Such notice . . . shall be personally served in the same manner as is provided by law for the service of summons."

It is conceded that notice of the foreclosure of the chattel lien was not served on either of the appellants. Notice was served, however, on one Wahlers, as the real and ostensible owner of the truck. Such service, respondent contends was sufficient to sustain the validity of the chattel lien foreclosure.

The title and ownership of the truck, as disclosed by the evidence, is involved in a rather devious course of dealing between Wahlers, the appellants, and Overaa. The truck was purchased March 21, 1929, by Overland and Wahlers from Moreland Truck Company, but title was taken in the name of appellant Nelson, who on the same day executed a conditional bill of sale to Wahlers and Overland. The apparent purpose of handling the transaction in this manner was to carry out the terms of a written agreement Wahlers and Overland had entered into relative to the purchase and operation of the truck. By the terms of this agreement, they each had a half interest in the truck. Wahlers was to operate the truck on such jobs as they could find for its use. The earnings from its operation were to go to pay expenses of running the truck, installments on the purchase price, and wages to Wahlers or other driver. Any profit, after the payment of these items, was to be divided equally between Wahlers and Overland.

In 1930, Wahlers had an accident while operating

the truck, as a result of which he and Overland were sued for damages. At about the same time, Overland ''sold'' his interest in the truck to Wahlers, filed an answer in the damage action denying any interest in the truck, and, on the trial of that action, supported the denial of his answer by his sworn testimony. The ''sale'' by Overland to Wahlers was accomplished in the following manner. Appellant Nelson gave Wahlers a bill of sale and took his note for $3,500, secured by a chattel mortgage on the truck. This mortgage was subsequently released. Wahlers testified it was paid; appellants testified it was not.

For some time prior to July, 1932, the truck had been in the actual possession of Overaa, who had been employed by Wahlers to operate it. While it is not clear from the evidence, it seems that, during the period Overaa was operating the truck, both he and Wahlers recognized that Overland had an interest in it. However, when Overaa presented a bill for repairs to the truck to Overland, the latter denied responsibility for it.

Sometime in June, 1932, Herbert Nelson, husband of appellant Irene Nelson and son-in-law of Overland, accompanied by a constable who was represented to be a deputy sheriff, went to Overaa's place and took possession of the truck. While Overaa and Wahlers were both present at the time, we think it clear that possession of the truck was obtained without their consent through the artifice indicated. (In passing, it may be noted that there is a striking lack of candor apparent in Overland's testimony concerning his connection with this incident. There can be no doubt but that Nelson and the constable were acting for, and at the behest of, Overland, yet he feigned ignorance of this procedure.)

Overaa found the truck standing on the street a day

or two later, and took possession of it. He then foreclosed his chattel lien and received a bill of sale from the sheriff on July 22, 1932. On July 26th, he executed the note and mortgage which gives rise to this action.

■ We have set out in considerable detail the facts disclosed by the record, for the purpose of showing with what difficulties the trier of fact was confronted in ascertaining where the truth lay. We think the facts as disclosed by this record demonstrate, without argument, the soundness of the rule, long adhered to by this court, that the findings of the trial court will not be disturbed unless the evidence clearly preponderates against them. It is a case where the trial court's opportunity to observe the witnesses and hear their testimony gave him a peculiar advantage in ascertaining the truth. We think he was fully warranted in disregarding Overland's present claim of ownership of the truck. For the latter had disclaimed and divested himself of any interest in the truck at a time when it appeared to his disadvantage to admit an interest in it. The evidence of his becoming re-invested of an interest in the truck after the damage suit was tried is not at all persuasive. Indeed, we can find nothing in the record which tends to show how or when he re-acquired the interest he now claims.

Judgment affirmed.

BEALS, C. J., TOLMAN, GERAGHTY, and MILLARD, JJ., concur.